# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ] | |
| | ] | |
| v. | ] | 2:18-CR-00195-KOB-SGC-1 |
| | ] | |
| STEVEN MICHAEL HARRISON, | ] | |
|     Defendant. | ] | |

## **MEMORANDUM OPINION**

This matter comes before the court on Defendant Steven Michael Harrison's motion to dismiss the one-count indictment charging him with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 15). Mr. Harrison contends that his prior Alabama state court conviction for being a prohibited person in possession of the same firearm at the same time and place bars his prosecution in this case pursuant to the Double Jeopardy Clause of the Fifth Amendment. The court WILL DENY Mr. Harrison's motion because, under the "dual-sovereignty" doctrine, the Double Jeopardy Clause does not prohibit successive prosecutions by a state government and the federal government of the same person for the same conduct.

**I.    BACKGROUND**

Mr. Harrison faces two prosecutions for being a felon in possession of a firearm on or about September 2, 2017. Mr. Harrison first pled guilty in the District Court of Jefferson County, Alabama on October 11, 2017 to being a

1

prohibited person in possession of a firearm in violation of Ala. Code § 13A-11-72(a). (Doc. 15 at 10). Then on April 26, 2018, a federal grand jury returned a one-count indictment charging Mr. Harrison with being a prohibited person in possession of the same firearm on the same date in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). The possession of the firearm at issue in the Alabama state prosecution forms the basis of this federal prosecution. For this reason, Mr. Harrison contends that this federal prosecution subjects him to double jeopardy in violation of the Double Jeopardy Clause of the Fifth Amendment and moves the court to dismiss the indictment.

## II. ANALYSIS

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. But as the Supreme Court recently reaffirmed, "under what is known as the dual-sovereignty doctrine, a single act gives rise to distinct offenses—and thus may subject a person to successive prosecutions—if it violates the laws of separate sovereigns." *Puerto Rico v. Sanchez Valle*, 579 U.S. ---, 136 S. Ct. 1863, 1867 (2016). And the Supreme Court has long held that "the States are separate sovereigns from the Federal Government." *Id.* (citing *Heath v. Alabama*, 474 U.S. 82, 88 (1985), *Abbate v. United States*, 359 U.S. 187, 195 (1959), and *Bartkus v. Illinois*, 359 U.S. 121, 132–137 (1959)). Accordingly, long-standing Supreme

Court precedent establishes that a state prosecution does not bar a subsequent federal prosecution of the same person for crimes that consist of the same elements arising out of the same acts. *See, e.g.*, *Sanchez Valle*, 136 S. Ct. at 1870; *United States v. Wheeler*, 435 U.S. 313, 317–18 (1978); *United States v. Lanza*, 260 U.S. 377, 382 (1922). Mr. Harrison's motion fails under this precedent.

Nevertheless, although binding precedent is, after all, binding precedent, the court expresses concern with the vitality of the dual-sovereignty doctrine in light of Justice Ginsburg's concurring opinion in *Sanchez Valle*, in which Justice Thomas joined. In *Sanchez Valle*, the Supreme Court reaffirmed the dual-sovereignty doctrine but held that Puerto Rico was *not* a separate sovereign from the United States, so Puerto Rico and the United States could not both prosecute the same person for the same offense under the Double Jeopardy Clause. 136 S. Ct. at 1876–77.

Justice Ginsburg joined the Court's opinion in *Sanchez Valle* because it correctly applied the controlling dual-sovereignty doctrine, but she wrote a concurring opinion "to flag a larger question that bears fresh examination . . . in a future case in which a defendant faces successive prosecutions by parts of the whole USA." *Id.* at 1877 (Ginsburg, J., concurring). This case is such a case.

In her well-reasoned concurring opinion, Justice Ginsburg questioned the constitutionality of the dual-sovereignty doctrine altogether. She wrote: "[t]he

3

double jeopardy proscription is intended to shield individuals from the harassment of multiple prosecutions for the same misconduct. *Green v. United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957). Current 'separate sovereigns' doctrine hardly serves that objective." *Sanchez Valle*, 136 S. Ct. at 1877 (Ginsburg, J., concurring).

Justice Ginsburg acknowledged that the individual states and the federal government are parts of one whole and asked, "within that whole is it not 'an affront to human dignity,' *Abbate v. United States*, 359 U.S. 187, 203, 79 S. Ct. 666, 3 L. Ed. 2d 729 (1959) (Black, J., dissenting), 'inconsistent with the spirit of [our] Bill of Rights,' Developments in the Law—Criminal Conspiracy, 72 Harv. L. Rev. 920, 968 (1959), to try or punish a person twice for the same offense?" *Id.* Notably, Justice Thomas joined in Justice Ginsburg's concurrence questioning the constitutionality of the dual-sovereignty doctrine to prosecute a person twice for the same conduct.

The court asks the same question here. Mr. Harrison, a felon, possessed a firearm in Alabama on or about September 2, 2017. The District Court of Jefferson County, Alabama sentenced him to a term of three years' imprisonment for this conduct. Mr. Harrison now faces punishment from the federal government for the exact same conduct. If Mr. Harrison is convicted of the federal charge against him, he will indisputably be punished twice for the same conduct. This

4

dual-punishment may entirely fail to serve the Double Jeopardy Clause's objective "to shield individuals from the harassment of multiple prosecutions for the same misconduct" and be an "affront to human dignity . . . inconsistent with the spirit of [our] Bill of Rights." *Sanchez Valle*, 136 S. Ct. at 1877 (Ginsburg, J., concurring) (internal quotations and citations omitted).

The court understands the well-settled theory underlying the dual-sovereignty rule: an "offence" is a crime as defined by a "sovereign"; the states and the federal government are separate "sovereigns"; therefore, a single act violating both a federal law and a state law constitutes two distinct "offences." *See Heath*, 474 U.S. at 88; *Bartkus*, 359 U.S. at 131; *Lanza*, 260 U.S. at 382. But the court nevertheless shares Justice Ginsburg's concerns and, for the following reasons, questions whether that theory produces a result that the framers of the Constitution intended the Double Jeopardy Clause to prevent.

The theory underlying the dual-sovereignty doctrine rests on the Supreme Court's definition of "offence" found in *Moore v. People of State of Illinois*, 55 U.S. 13, 19 (1852). *See Bartkus*, 359 U.S. at 131 (calling *Moore* the "definitive statement" of the dual-sovereignty doctrine "which had been evolving"). In *Moore*, the Supreme Court found that "[a]n offence, in its legal signification, means the transgression of a law." 55 U.S. at 19. Based on this definition of "offence," the Court continually reaffirmed the rule that "[t]he same act may be an

5

offence or transgression of the laws of [two sovereigns]." *Moore*, 55 U.S. at 20; *see, e.g.*, *Wheeler*, 435 U.S. at 317 ("The basis for this doctrine is that prosecutions under the laws of separate sovereigns do not, in the language of the Fifth Amendment, 'subject [the defendant] for the same offence to be twice put in jeopardy.'"); *Lanza*, 260 U.S. at 382 ("[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.").

But the Supreme Court's definition of "offence" troubles this court when looking at the "common-law conception of crime as an offense against the sovereignty of the government" from which the Supreme Court derived the dual-sovereignty doctrine. *Heath*, 474 U.S. at 88. According to the Supreme Court, the common-law idea of "offence" incorporates "sovereignty"—no "offence" occurs without a "sovereignty." But tracing the history of "sovereignty" as the framers understood it may reveal that a state is not a "sovereign" for purposes of the Double Jeopardy Clause.

Under English common-law principles, and as understood by the framers, "sovereignty" rested in the final and indivisible authority of the Crown. *See Chisholm v. Georgia*, 2 U.S. 419, 470 (1793) (Jay, C.J.). Following the Revolution, that "sovereignty" belonged "to the whole people" of the United States. *Id.* And then, as Chief Justice John Jay wrote, "the people, in their

collective and national capacity, established the present Constitution. It is remarkable that in establishing it, the people exercised their own rights, and their own proper sovereignty, and . . . declared with becoming dignity, 'We the people of the United States, do ordain and establish this Constitution.'" *Id.* Chief Justice Jay saw "the people acting as sovereigns of the whole country; and in the language of sovereignty, establishing a Constitution by which it was their will, that the State Governments should be bound, and to which the State Constitutions should be made to conform." *Id.* Chief Justice Jay's opinion describes "popular sovereignty," the fundamental principle underlying the Constitution that power derives from the people. *See Alden v. Maine*, 527 U.S. 706, 719 (1999).

But the dual-sovereignty doctrine, as it defines a state government and the federal government as equally "sovereign" for purposes of the Double Jeopardy Clause, may denigrate popular sovereignty. If an "offence" is a transgression against a "sovereign," a person commits an "offence" against "the whole people"; but if two authorities prosecute a person for the same conduct giving rise to the transgression, the person is "subject for the same offence to be twice put in jeopardy."

Moreover, under basic principles of federalism, "we consider the State governments and the national governments, as they truly are, in the light of kindred systems . . . . [T]he national and State systems are to be regarded as ONE

7

WHOLE," similar to the principle that sovereignty derives from the whole people. *See* The Federalist No. 82 (Alexander Hamilton). Subjecting a person to two prosecutions for one act because two parts of a whole define the same conduct as a crime disregards these principles altogether.

Justice Hugo Black identified even more issues with the Supreme Court's ideas of sovereignty in his dissenting opinion in *Abbate*. In that case, the Supreme Court reaffirmed the dual-sovereignty doctrine and held that a criminal defendant's prior state conviction for conspiracy did not bar a subsequent federal prosecution for the same conspiracy. *Abbate*, 359 U.S. at 196. Justice Black, with whom Chief Justice Earl Warren and Justice William Douglas joined, wrote a dissenting opinion because he was "not convinced that a State and the Nation can be considered two wholly separate sovereignties for the purpose of allowing them to do together what, generally, neither can do separately." *Abbate*, 359 U.S. at 203 & n.3 (Black, J., dissenting) (noting that, as of 1959, almost all state constitutions had provisions similar to the Double Jeopardy Clause). This dilemma that Justice Black identified could be resolved by removing dual-sovereignty from the Supreme Court's idea of "offence."

In addition, and for good reason, Justice Black believed that the framers may have intended to prevent the dual-sovereignty doctrine from creeping into our jurisprudence. *See Abbate*, 359 U.S. at 203–04 (Black, J., dissenting). Justice

8

Black traced the history of the Double Jeopardy Clause back to 1789 when "a proposed amendment to the Double Jeopardy Clause was rejected in our First Congress while the Bill of Rights was being considered." *Abbate*, 359 U.S. at 203 (Black, J., dissenting). If the amendment had passed, the Double Jeopardy Clause would have read, "'[n]o person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence *by any law of the United States*.'" *Id.* at 204 n.6 (emphasis added) (quoting 1 Annals of Cong., 753 (1789)). The amendment would have permitted successive prosecutions by a state government and the United States government, because the state crime is, of course, not an offence against "any law of the United States." So, Justice Black believed that by rejecting the amendment Congress also rejected the dual-sovereignty doctrine. *Id.* at 204. This court agrees that, just as Justice Black "fear[ed]" in his dissenting opinion, the Supreme Court has "firmly established as the constitutional rule" a doctrine that "Congress refused to accept." *Id.*

Aside from the Supreme Court's ideas of sovereignty, the Supreme Court has relied on public policy and practical concerns in upholding the dual-sovereignty doctrine, but other public policy and practical concerns weigh much more heavily *against* the dual-sovereignty doctrine. In *Abbate* and *Bartkus*, the Supreme Court emphasized that not allowing successive prosecutions by a state and the federal government would undermine each government's authority to

9

define and punish crimes against it, especially in cases where the two authorities would impose drastically different sentences for the same conduct. *Abbate*, 359 U.S. at 195; *Bartkus*, 359 U.S. at 136–37.

But this court is more concerned with how the dual-sovereignty doctrine permits "a man to be punished twice for the same offense, once by a State and once by the United States," which is practically the same "as it would be for one of these two Governments to throw him in prison twice for the offense." *Abbate*, 359 U.S. at 203 (Black, J., dissenting). The court questions why one scenario is constitutional and the other is not when both produce identical results of double punishment, which may fairly be characterized as "an affront to human dignity" and "dangerous to human freedom." *Id.*

Even ignoring the issue of what sovereignty means, the Double Jeopardy Clause uses the word "offence," not "sovereign." The Supreme Court wrote "sovereign"—and the term's common-law baggage—into the definition of "offence," but the plain meaning of "offence" does not require the concept of sovereignty. For example, as Justice Ginsburg implied, "offence" could plainly mean "misconduct" or acts punishable by a state or the federal government. *See Sanchez Valle*, 136 S. Ct. at 1877 (Ginsburg, J., concurring). If the framers intended the more plain definition of "offence," such as misconduct, then the dual-sovereignty doctrine would have no place under the Double Jeopardy Clause.

The Supreme Court will in its October 2018 term have the opportunity to address these issues when it decides "whether the Court should overrule the 'separate sovereigns' exception to the Double Jeopardy Clause" in *Gamble v. United States*, No. 17-646 (cert. granted on June 28, 2018). There, as in this case, the criminal defendant could be prosecuted by the federal government for the same incident that formed the basis of a prior state court conviction. But unless and until the Supreme Court overrules the dual-sovereignty rule, this court is bound to follow it and so must deny Mr. Harrison's motion to dismiss.

## III. CONCLUSION

By separate order, the court **WILL DENY** Mr. Harrison's motion to dismiss the indictment.

**DONE** and **ORDERED** this 12th day of October, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE